**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 16-cv-1929-WJM-CBS

ADOLFO HERNANDEZ,
ROGELIO FLORES-ESCOBAR,
FRANCISCO SILVA-GARCIA,
MARTIN PEREZ-MEDEL,
GUSTAVO ARELLANO-OLMOS,
LUIS LEON-SALINAS, and
MANUEL MORALES,

      Plaintiffs,

v.

RAY DOMENICO FARMS, INC.,
GREGORY L. DOMENICO, and
THERESA M. DOMENICO,

      Defendants.

---

## ORDER RESOLVING PENDING MOTIONS AND *SUA SPONTE* CERTIFYING QUESTION OF LAW TO THE COLORADO SUPREME COURT

---

If an employee is fired in Colorado, does the Colorado Wage Claim Act

("CWCA"), Colo. Rev. Stat. §§ 8-4-101 to -123, authorize that employee to sue for all

past-due wages owed regardless of how long ago those wages should have been paid,

and regardless of whether the statute of limitations has run on the cause of action that

the employee normally would bring to recover those wages? This case presents that

question, and the authorities—up to now, all of them federal—are divided.

This matter affects all employers and employees in Colorado. It is also the sort

of thing that tends to evade Colorado state-court review indefinitely, given that CWCA

claims are nearly always brought in the same lawsuit as a claim under the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, thus invoking this Court's original jurisdiction. For these reasons and additional reasons explained below, the Court *sua sponte* certifies the question to the Colorado Supreme Court.

## I. BACKGROUND & SUMMARY OF RULING

In this lawsuit, Plaintiffs Adolfo Hernandez, Rogelio Flores-Escobar, Francisco Silva-Garcia, Martin Perez-Medel, Gustavo Arellano-Olmos, Luis Leon-Salinas, and Manuel Morales (together, "Plaintiffs") sue their former employer, Ray Domenico Farms, Inc. ("Domenico Farms"), and two of its principals, Gregory L. Domenico, and Teresa M. Domenico (together with Domenico Farms, "Defendants"), for various alleged violations of the FLSA, the CWCA, and the Migrant and Seasonal Agricultural Worker Protection Act (specifically, 29 U.S.C. §§ 1821(a), 1822(a) & (c), and 1855(a)), as well as for simple breach of contract and unjust enrichment. (*See* ECF No. 27.)

The federal statutory causes of action are the bulk of Plaintiffs' fourteen claims for relief. But the "real money," so to speak, appears to be in the CWCA causes of action (Counts XI & XII), through which Plaintiffs seek to recover all unpaid wages going back to the beginning of their various employment relationships with Defendants—in some cases, back to 1992. This is something the FLSA, by itself, would not permit. *See* 29 U.S.C. § 255(a) (two- or three-year statute of limitations).

Currently before the Court are the parties' early cross-motions for partial summary judgment disputing whether the CWCA permits such an indefinite "lookback" for unpaid wages, in contrast to the normal statute of limitations that (like the FLSA) requires an employee to sue within two or three years of going unpaid, depending on

the circumstances.  (*See* ECF No. 23 (Defendants' motion); ECF No. 25 (Plaintiffs' motion).)  In light of the Court's decision to certify the question, the Court denies both motions without prejudice.

Also before the Court is Defendants' Motion to Partially Dismiss Plaintiffs' Eleventh Count Against Defendants Pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 33.) This motion presents an alternative, federal-law basis for limiting Plaintiffs' CWCA lookback to two or three years.  For the reasons explained below, the Court denies this motion as well.

## II.  FACTS

The following facts are undisputed for purposes of this motion, unless attributed to one party or the other.[1]

Domenico Farms is a Colorado corporation headquartered in Platteville, Colorado.  (ECF No. 27 ¶ 19.)  Domenico Farms grows organic vegetables.  (*Id*. ¶ 38.) For many years, Domenico Farms has employed year-round workers, seasonal migrant workers, and temporary foreign workers brought to Colorado from Mexico through the H-2A visa program.  (*Id*. ¶ 40.)  All of the Plaintiffs in this action were either year-round workers or seasonal migrant workers.  (*Id*. ¶¶ 44, 46.)  They were all paid by the hour. (*Id*. ¶ 42.)  Their claimed or undisputed periods of employment with Domenico Farms are as follows:

---

[1] Plaintiffs' summary judgment motion seeks a ruling establishing the beginning and ending dates of certain of the Plaintiffs' employment periods.  (ECF No. 25 at 2.)  Defendants admit all of these assertions for purposes of Plaintiffs' motion.  (ECF No. 34 at 3.)

- Plaintiffs Leon-Salinas, Morales, and Perez-Medel all claim to have been employed as seasonal workers "from April 1992 through approximately April 2016." (*Id*. ¶¶ 14, 16, 17.)

- Plaintiff Arellano-Olmos claims to have been employed as a seasonal worker "from approximately April 1997 through approximately 2004 and again on or around April 2005 through approximately April 2016." (*Id*. ¶ 15.)

- Plaintiff Hernandez worked for Domenico Farms from October 24, 2001, to March 25, 2016. (ECF No. 25 at 2, ¶ 1.)

- Plaintiff Flores-Escobar worked for Domenico Farms from June 12, 2009, to March 25, 2016. (*Id*. ¶ 2.)

- Plaintiff Silva-Garcia worked for Domenico Farms "between 1999 and March 25, 2016." (*Id*. ¶ 3.)

Plaintiffs allege they never received overtime pay during their employment. (ECF No. 27 ¶ 84.) Agricultural workers are normally exempt from the FLSA's overtime requirements. *See generally* 29 C.F.R. part 780. Plaintiffs claim, however, that Domenico Farms employed them in non-agricultural tasks, and did so in weeks in which they worked more than forty hours, thus requiring Domenico Farms to pay overtime. (*See* ECF No. 27 ¶¶ 75–88, 98–106.) The Plaintiffs who worked seasonally also claim they were denied the straight-time wage they should have received under the Migrant and Seasonal Agricultural Worker Protection Act. (*Id*. ¶¶ 50–74, 129–87.)

In January 2016, Plaintiffs contacted Defendants to assert that they had been denied rightful compensation. (*Id*. ¶¶ 89, 95.) According to Plaintiffs, Defendants then "undertook a self-imposed, internal audit of work authorization documents," through which they "determined that the year-round worker Plaintiffs lacked legal authority to be employed." (*Id*. ¶¶ 90, 91.) The year-round Plaintiffs say they were terminated in March 2016 in retaliation for asserting their rights. (*Id*. ¶¶ 93–94.) The seasonal workers allegedly suffered the same fate the following month. (*Id*. ¶¶ 14–17, 95–97.)

### III. ANALYSIS

#### A. Relevant Statutory Language

The parties' competing summary judgment motions turn on the interaction of two portions of the CWCA, namely, Colo. Rev. Stat. § 8-4-103(1)(a) (for ease of reading, "§ 103") and Colo. Rev. Stat. § 8-4-109(1)(a) ("§ 109"). Section 103 establishes that earned wages and other compensation usually become "due and payable" ten days after the end of a pay period:

> All wages or compensation, other than those mentioned in section 8-4-109 [*i.e.*, § 109], earned by any employee in any employment, other than [those due under a deferred compensation plan], shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer, and on regular paydays no later than ten days following the close of each pay period unless the employer and the employee shall mutually agree on any other alternative period of wage or salary payments.

Section 109, for its part, applies "[w]hen an interruption in the employer-employee relationship by volition of the employer occurs" (generally, when the employer terminates the employee) and makes "wages or compensation for labor or service

5

earned, vested, determinable, and unpaid at the time of such discharge . . . due and payable immediately."

Up until 2003, § 103 had been codified two sections later in the statute, *i.e.*, at § 8-4-105; and § 109 had been codified five sections earlier, *i.e.*, at § 8-4-104. *See* 2003 Colo. Legis. Serv. ch. 286, § 1 (H.B. 03-1206). Along with the re-codification, § 103's "other than those mentioned in" cross-reference was amended to keep it connected to what had been § 104 and was now codified at § 109. *Id.* In other words, the only textual difference between the pre-amendment and post-amendment versions of § 103 was a single digit (changing a 4 to a 9). As for § 109, the phrase "vested, determinable," was inserted. *Id.* The significance of these amendments will be discussed in detail below.[2]

The Court notes two other portions of the CWCA relevant to the present dispute. First, § 8-4-110(2) provides that "[a]ny person claiming to be aggrieved by violation of any provisions of this article or regulations prescribed pursuant to this article may file suit in any court having jurisdiction over the parties without regard to exhaustion of any administrative remedies." Second, § 8-4-122 ("§ 122") requires that "[a]ll actions brought pursuant to [the CWCA] shall be commenced within two years after the cause of action accrues and not after that time; except that all actions brought for a willful violation of this article shall be commenced within three years . . . ."

The parties here agree that (1) § 103 and § 109 each create a cause of action under the CWCA, (2) each is governed by the two- or three-year statute of limitations

_____

[2] Certain other changes were made that are not relevant here.

stated in § 122, and (3) the wages one may sue for under the CWCA include compensation to which one is entitled by statute, such as FLSA overtime pay. The parties disagree over whether § 109 encompasses all unpaid compensation that had accrued up to the point of termination, including unpaid amounts that accrued more than two (or three) years prior; or whether § 109 applies only to the amounts owed for the employee's final pay period, and § 103 governs all prior compensation. Stated differently, the question is whether § 109 revives injuries for which the employee could no longer sue under § 103.

**B.      Effect of FLSA Statute of Limitations**

Before the Court reaches that question directly, it must address an argument raised in Defendants' Motion to Dismiss that could moot the question. Defendants' argument begins with the proposition that the CWCA creates no substantive right to wages. (*See* ECF No. 33 at 4–5.) Rather, it establishes standards that employers must follow when paying wages, and remedies for employees who have not been timely paid. But the right to the wages must come from some other source, such as an employment contract or a statute. Plaintiffs agree: "[The CWCA] does not supply the substantive right to the overtime compensation Plaintiffs seek—the Fair Labor Standards Act does." (ECF No. 40 at 2.)

Having established this premise, Defendants further argue that "any 'earned, vested, and determinable' wages due to Plaintiffs under [§ 109] are limited by what is recoverable under the FLSA." (ECF No. 33 at 5.) By this, Defendants mean that the FLSA's statute of limitations is incorporated into § 109. The FLSA's statute of limitations, like the statute of limitations in the CWCA (§ 122), is normally two years, but

can be extended to three upon a showing of willfulness:

> Any action . . . to enforce any cause of action for unpaid
> minimum wages, unpaid overtime compensation, or
> liquidated damages, under the Fair Labor Standards Act * * *
> shall be forever barred unless commenced within two years
> after the cause of action accrued, except that a cause of
> action arising out of a willful violation may be commenced
> within three years after the cause of action accrued . . . .

29 U.S.C. § 255(a). According to Defendants, the running of the FLSA statute of

limitations converts a "vested" § 109 wage claim to a "divested," non-actionable claim.

(ECF No. 44 at 4.)

Plaintiffs disagree, citing to a number of cases that supposedly stand for the

proposition that "[c]ourts have long recognized that CWCA § 109 provides for recovery

of wages due after the source of substantive entitlement has expired." (ECF No. 40

at 4 (emphasis removed).) The first of these cited cases is *Farris v. ITT Cannon*, 834 F.

Supp. 1260 (D. Colo. 1993). As discussed in detail below at Part III.C, *Farris* indeed

appears to stand for this proposition, but an analytical oversight in *Farris* severely limits

*Farris*'s persuasive value in this regard.

The only other case cited by Plaintiffs that is reasonably on-point is *Redmond v.*

*Chains, Inc.*, 996 P.2d 759 (Colo. App. 2000), in which the plaintiff sued to recover

amounts to which she believed she was entitled under the FLSA. *See id*. at 761. The

Colorado Court of Appeals affirmed the trial court's conclusion that the FLSA statute of

limitations had expired on most of the plaintiff's FLSA claims. *Id*. at 762–63. However,

the Court of Appeals reversed the trial court's ruling that the FLSA was the plaintiff's

sole remedy, to the exclusion of the CWCA. *Id*. at 764–65. The appellate court found

that the CWCA provided "relief that is not available under the FLSA," including "three years of back wages, as opposed to two under the FLSA," and was therefore still available to the plaintiff despite the running of the FLSA's statute of limitations. *Id*. at 764. It is not clear where the court discerned this "three years of back wages" distinction. Both the FLSA and the CWCA have a two- or three-year statute of limitations, depending on willfulness. Regardless, it is clear the court assumed that a right to wages arising from the FLSA could continue to be enforced under the CWCA for up to three years, even if the two-year FLSA limitations period had expired.

Although a Colorado state-court case, *Redmond* does not actually bind this Court. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240–41 (10th Cir. 2003) (federal courts sitting in diversity are not bound by the decisions of state intermediate appellate courts). *Redmond*'s persuasive value is also somewhat diminished by an apparent misunderstanding that the FLSA and CWCA statutes of limitation somehow diverge. In any event, if *Redmond* is as persuasive as Plaintiffs think, it is nearly as persuasive on the topic of whether § 109 can reach claims that have expired under § 103—and it suggests a "no" answer, given that the CWCA supposedly only provides "three years of back wages."

In contrast to Plaintiffs' cited case law, the Court finds that Plaintiffs' arguments grounded in the FLSA's text have more force. Plaintiffs note (ECF No. 40 at 5) that the FLSA statute of limitations specifically applies to actions brought "under the Fair Labor Standards Act." 29 U.S.C. § 255. Plaintiffs' CWCA causes of action were not brought under the FLSA, and they could have been brought independently (although still relying on the FLSA for the substantive right to wages).

Defendant must therefore be arguing that the FLSA *preempts* the CWCA, at least to the extent the CWCA provides for a longer limitations period. Whether the FLSA preempts more-generous state remedies is a matter of some debate, with the Fourth Circuit and the Ninth Circuit apparently representing the opposing views. *Compare Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007) (finding preemption) *with Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000) (finding no preemption). However, Defendants entirely fail to offer a preemption analysis, instead relying solely on their interpretation of "earned, vested, and determinable" under § 109. Defendants have accordingly forfeited this argument, and the Defendants' Motion to Dismiss is denied.[3]

## C.    Case Law Interpreting §§ 103 & 109

The Court now turns to the original question posed above: whether § 109 can, in effect, revive expired § 103 claims. A series of decisions from this District have reached differing answers.

The first such decision is *Farris*, mentioned above, which U.S. District Judge

---

[3] The Court would deny the Motion to Dismiss on its merits anyway. The Colorado Court of Appeals's *Redmond* decision found a lack of preemption, and the undersigned has relied on it for the notion that "Plaintiffs are entitled to bring claims under both the FLSA and [CWCA]." *Evans v. Loveland Auto. Investments, Inc.*, 2015 WL 161295, at *5 (D. Colo. Jan. 13, 2015). On appeal, the Tenth Circuit affirmed, in an unpublished decision, that CWCA penalties may be recovered in addition to FLSA damages. 632 F. App'x 496, 498–99 (10th Cir. 2015). The Tenth Circuit's decision is persuasive authority for the general notion that the CWCA can offer more-generous remedies, which is also supported by the FLSA's own statement that state laws regarding minimum wage, maximum work week, and child labor remain in force to the extent they are more generous to employees, 28 U.S.C. § 218(a), thus evidencing Congress's intent not to interfere with state laws designed to provide greater protection of employees' rights. In other words, if the Colorado Legislature wants to permit an indefinite lookback for unpaid wages, including FLSA overtime pay, it may. Whether it has done so is the question the Court will certify.

Lewis T. Babcock decided nearly twenty-five years ago.  The plaintiff in *Farris* had been

laid off and sued under § 109 (then § 104) for commissions that allegedly became

payable in February 1989.  834 F. Supp. at 1264, 1265.  Because the plaintiff did not

file suit until July 1992, more than three years later, the defendant argued that his claim

was untimely.  *Id*. at 1265.  The plaintiff countered that, under the plain language of

§ 109, his compensation did not become "due and payable"—or in other words, his

cause of action did not accrue—until his termination in February 1992, and so his July

1992 lawsuit was timely.  *Id*.

Notably, as far as the *Farris* decision reveals, no party raised § 103 (then § 105)

and its possible effect.[4]  In any event, Judge Babcock agreed with the plaintiff.  He

reasoned that "[§ 109] fails to offer any relief to employees whose wages are withheld

while they are still employed.  Consequently, Farris had no alternative but to wait until

he left ITT in February, 1992 before bringing his [§ 109] wage claim."  *Id*. (citation

omitted).

All this is true as far as it goes: § 109, *by itself*, "fails to offer any relief to

employees whose wages are withheld while they are still employed."  But this is

obviously not true of the CWCA generally, as demonstrated by § 103.  Again, however,

there is no hint in the record that any party had made Judge Babcock aware of § 103,

nor how it would have affected his analysis.

Jumping forward twenty years, U.S. District Judge R. Brooke Jackson

announced in an unpublished disposition that "*Farris* is no longer instructive" on the

---

[4] Section 103 was a part of the statute when Judge Babcock decided *Farris* in 1993. *See* Colo. Rev. Stat. § 8-4-105 (1990 main volume).

11

question of the statute of limitations in light of unspecified amendments to the CWCA that "allow[] employees to bring suits against their employers for unpaid wages before the employment relationship ends." *Farley v. Family Dollar Stores, Inc.*, 2013 WL 500446, at *2 (D. Colo. Feb. 11, 2013). Judge Jackson accordingly held that the plaintiffs in that lawsuit "did not need to wait until their employment terminated. Therefore, the cause of action against the [defendant] accrued at the time any wages were withheld, and a lawsuit must have been filed within three years of that time." *Id*.

In reality, there was no amendment between *Farris* and *Farley* that allowed employees to sue before the end of their employment—that right had been there all along, in § 103. Judge Jackson may have been referring to the 2003 rearrangement of the CWCA, but as already noted, the rearrangement changed nothing of substance regarding a current employee's right to sue.

Last year, Judge Babcock returned to his *Farris* decision in light of *Farley*. *See Irigoyen-Morales v. Concreations of Colo., Inc.*, 2016 U.S. Dist. LEXIS 85837 (June 30, 2016).[5] At issue in *Irigoyen-Morales* was a motion to amend the plaintiff's complaint to add a § 109 claim. *Id*. at *1. The defendant opposed on futility grounds, arguing, among other things, that "the applicable statute of limitations [*i.e.*, § 122] precludes a claim for overtime pay extending back 10 years." *Id*. at *4. Judge Babcock rejected this as a basis to deny amendment, reasoning as follows:

> While C.R.S. § 8-4-103 provides that wages are due and payable when earned, Plaintiff's CWCA claim is brought pursuant to C.R.S. § 8-4-109—not C.R.S. § 8-4-103. Section 8-4-109 only applies to employees whose wages are

---

[5] The Court could locate no parallel Westlaw citation.

withheld after their employment terminates. It follows that
no cause of action accrues under this provision of the
CWCA until the employee has been terminated. [Citing
*Farris*.] Although [*Farley*] rejected this analysis on the basis
that employees may now bring claims under the CWCA
while the employment relationship is ongoing, [*Farley*] did
not address the distinction between claims under Sections
8-4-103 & 109. In any event, this argument fails to
demonstrate that Plaintiff's proposed claim under the CWCA
is futile in its entire[t]y. Since Colorado law is somewhat
ambiguous on this point, however, nothing in this Order shall
preclude Defendants from raising this issue at some other
stage of the case.

*Id.* at *5.

Finally, U.S. Magistrate Judge Scott T. Varholak recently issued a Report and
Recommendation regarding this issue. *See Norwood v. WBS, Inc.*, 15-cv-0622, ECF
No. 85 (Nov. 14, 2016).[6] Judge Varholak concluded that the plain language of the
CWCA established that §§ 103 and 109 are separate but not exclusive causes of
action, and so a current employee has two or three years to sue while still an employee,
and then gets another two or three years after his or her termination to sue for any still-
unpaid wages, including those for which he or she could no longer sue under § 103. *Id.*
at 7–8.[7]

---

[6] At ECF No. 108 in that case, U.S. District Judge Robert E. Blackburn terminated
Judge Varholak's recommendation in light of a pending settlement.

[7] Judge Varholak also reasoned that "the General Assembly has not amended the
relevant portions of the CWCA since *Farris*, despite making other amendments to the statute,"
which supposedly shows "acquiesce[nce] [to] the *Farris* Court's conclusion." *Id.* at 6 (citing *City
of Colo. Springs v. Powell*, 156 P.3d 461, 467 (Colo. 2007)). As a general matter, it is true in
Colorado that "[w]hen a statute is amended, the judicial construction previously placed upon the
statute is deemed approved by the General Assembly to the extent that the provision remains
unchanged." *Rauschenberger v. Radetsky*, 745 P.2d 640, 643 (Colo. 1987). But it is not clear
what force this principle has when a *federal* court interprets a Colorado statute, "it being well
settled that a state court is not bound by federal court interpretation of state law." *First Nat'l
Bank in Fort Collins v. Rostek*, 514 P.2d 314, 316 n.1 (Colo. 1973); *see also Union Pac. R.R.*

Naturally, Plaintiffs favor *Farris*, *Irigoyen-Morales*, and *Norwood*, while Defendants favor *Farley*. The undersigned respectfully finds *Farris* to be of little value —not because of some intervening amendment, as claimed in *Farley*, but because *Farris* contains no analysis of the impact of § 103 on the question presented. *Cf.* Anonymous [Oliver Wendell Holmes, Jr.], *Book Notices*, 14 Am. L. Rev. 233, 235 (1880) ("a conclusion based on the refutation of its opposite is very different from the same opinion based on ignorance of the arguments by which such an opposite could be maintained"). *Irigoyen-Morales* is also of little help given its sparse analysis and explicit reliance on the liberal amendment standard for pleadings. *Farley* is similarly unhelpful in that it relies on a supposed substantive amendment that never happened. *Norwood* presents the most thorough and helpful analysis, largely grounded in the statutory text. Rather than address *Norwood* point by point, the Court will likewise turn to the statutory text to glean whatever inferences may be there.

D.      **Plain Meaning vs. Meaning in Context**

Plaintiffs' strongest argument is that § 109's plain language contains no qualification: when an employer terminates the employee, "wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge [are] due and payable immediately." Nothing here suggests that wages which were "unpaid" more than two (or three) years ago are anything but "unpaid" at the time of

---

*Co. v. Martin*, 209 P.3d 185, 188 (Colo. 2009) ("Especially where an existing statute has already undergone construction by a *final judicial authority*, further legislative amendment necessarily reflects the legislature's understanding of that construction . . . ." (emphasis added)). It is even less clear under the circumstances of *Farris*, where the court drew its conclusions about § 109 without the benefit of any briefing by the parties of the impact of § 103 on this issue.

discharge as well. And "[i]f the plain language of the statute is clear and unambiguous, we interpret the statute according to its plain meaning." *Hernandez v. People*, 176 P.3d 746, 751 (Colo. 2008). Moreover, "[t]he purpose of the CWCA is to ensure that wages are paid in a timely manner and to provide adequate judicial relief in the event wages are not paid. The CWCA should be liberally interpreted to serve its purpose." *Fang v. Showa Entetsu Co.*, 91 P.3d 419, 421 (Colo. App. 2003).

The Court does not lightly depart from the plain-meaning canon or the charge to interpret the CWCA liberally, given its remedial character. But the "whole of [an enactment] must be read and construed in context. Only by so doing can a consistent, harmonious, and sensible effect be given to all its parts." *Travelers Indem. Co. v. Barnes*, 552 P.2d 300, 303 (Colo. 1976) (internal quotation marks omitted); *see also Martin*, 209 P.3d at 189–90 (analyzing a statutory provision in comparison to other closely related sections and grounding its holding in the statute "construed in context"). In context of the CWCA as a whole, reading § 109 as Plaintiffs do leads to results that are difficult to explain.

Imagine a new employee whose very first scheduled payday was June 1, 2000. The employer willfully refuses to pay this first paycheck, but the employee continues in the job. Under §§ 103 and 122 (the statute of limitations), the employee would need to file suit to recover this first paycheck no later than June 1, 2003. The employee does not do so and continues to work for the same employer for another seven years until he is fired on June 1, 2010. The employer does not tender the 10-year-old unpaid wages at the time of firing, the employee sends a written demand, and the employer still

refuses to pay.  *See* Colo. Rev. Stat. § 8-4-109(3) (establishing written demand requirements for unpaid compensation due post-termination or -separation).

Construing § 109 as Plaintiffs prefer, and construing it together with §§ 103 and 122, this employee has a viable cause of action from June 1, 2000 through June 1, 2003; then has *no* viable cause of action from June 2, 2003 through May 31, 2010; and finally has a viable cause of action once again from June 1, 2010 through June 1, 2013. The result would apparently be similar if the employee quits, except that the employer would have no obligation to pay at the time of termination, but could wait until "the next regular payday," *see id.* § 8-4-109(1)(b), so the precise accrual date of the cause of action would be delayed for a week or two.  A similar result would also obtain if the employee dies.  See *id.* § 8-4-109(4).

It is difficult to think of a reason why the Colorado Legislature would ever structure a remedy this way.  In particular, the Court can think of no reason why the Colorado Legislature would grant the employee three years to sue as long as he remains an employee (the Legislature wants you to get what's yours), then withdraw the right to sue for the remainder of his employment (the Legislature no longer wants you to get what's yours), then reinstate the right to sue again when that employment ends (the Legislature wants you to get what's yours again).  Stated differently, if the Colorado Legislature intended § 109 to cover the entire term of employment no matter how long (as Plaintiffs contend), what reason would the Colorado Legislature have to place a statute of limitations on § 103?  Why not simply provide that the § 103 cause of action expires two or three years after the termination of employment, like § 109?

One might imagine that, despite the CWCA's anti-retaliation protections, *see*

Colo. Rev. Stat. § 8-4-120, the Legislature intended to permit an employee to choose

not to "rock the boat"—to choose *not* to sue now, with confidence that he can still sue

upon termination. But if so, why would the Legislature place a time limit on the § 103

cause of action? Why would the Legislature conclude that an employee should have

only two or three years to decide whether to rock the boat, after which the employee

must wait until termination or separation, no matter how much the employee might need

that money in the interim?[8]

Given these oddities that necessarily flow from Plaintiffs' position, there is good

reason to look at the statutory context to see if any other reasonable interpretation

exists. *See State v. Nieto*, 993 P.2d 493, 501 (Colo. 2000) ("in construing a statute, we

must seek to avoid an interpretation that leads to an absurd result"). Defendants

contend that § 103 addresses wages regularly earned during a complete pay period,

while § 109 pertains only to the sorts of payments that tend to be due upon termination

(*e.g.*, hours worked since the close of the last pay period, accrued vacation,

unreimbursed travel expenses, etc.). There are at least three considerations that

support this view.

### E. "Other Than Those Mentioned in [§ 109]"

The first consideration comes from § 103. It states that "[a]ll wages or

compensation, *other than those mentioned in [§ 109]*, earned by any employee in any

employment . . . shall be due and payable [on the employee's regular payday]"

---

[8] Oddly, this would give an employee who missed the § 103 deadline an incentive to quit or provoke his own termination, so he can have a second chance through § 109. *Cf. Farris*, 834 F. Supp. at 1265 (". . . Farris had no alternative but to wait until he left ITT in February, 1992 before bringing his [§ 109] wage claim.").

(emphasis added).  The Court must, if possible, give effect to the phrase "other than those mentioned in [§ 109]."  *See Nieto*, 993 P.2d at 501 ("To reasonably effectuate the legislative intent, a statute must be read and considered as a whole and should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts." (internal quotation marks omitted)).  This is not an entirely straightforward task.  "Mentioned" is, to be candid, an extremely poor word choice on the Legislature's part.  Statutes "declare" or "define" or "describe" or "provide"—they do not "mention," as if name-dropping at a cocktail party.  *Cf*. Merriam-Webster Online, s.v. "mention" (defining the verb to mean "to make mention of," and defining the noun to mean "the act or an instance of citing or calling attention to someone or something especially in a casual or incidental manner"), *at* https://www.merriam-webster.com/dictionary/mention (last accessed Apr. 7, 2017).  Nonetheless, whatever is "mentioned" in § 109 is excluded from what an employee may recover under § 103, suggesting that the legislature intended §§ 103 and 109 to address different categories of compensation.

To be sure, § 109 does not contain a reciprocal provision ("other than those mentioned in § 103").  Thus, although § 103 prohibits recovery of whatever is "mentioned" in § 109, § 109 does not, by its terms, likewise prohibit recovery of whatever might have been owed under § 103.  But the Court must still seek to give effect to § 103's "other than" clause.  What sort of compensation might an employee wish to demand on a regular payday (§ 103) that the Legislature would choose to defer until termination (§ 109)?  This most naturally seems to refer to compensation that accrues pay period by pay period but is usually not payable on that basis, such as paid vacation.  It could also refer to wages earned since the close of the last pay period,

given that the end of the pay period and the payday corresponding to that pay period are often separated by a week or more.  And it could refer to bonuses or commissions that, by the terms of some contract or schedule, do not become payable until sometime after a particular future payday (*e.g.*, if the employer awards bonuses based on year-end sales but does not pay those bonuses until year-end accounting is finalized in January or February).

Thus, the most straightforward way to give meaning to § 103's "other than" clause is to assume that §§ 103 and 109 address mutually exclusive categories of compensation.

## F.    Interpretive Case Law Leading to the 2003 Amendments

The second consideration is legislative history, as influenced by judicial interpretive history, which provides some indirect support for the interpretation just advanced.

For many years prior to 2003, the CWCA jointly defined "'wages' or 'compensation'" as follows:

> all amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is performed under contract, subcontract, partnership, subpartnership, station plan, or other agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the person demanding payment.

Colo. Rev. Stat. § 8-4-101(9) (1973).  Construing this definition, the Colorado Supreme Court held in 1979 that "vacation pay is within [its] scope" because "vacation pay like wages is both vested and determinable as of the date of termination," in contrast to

"deferred compensation programs" (such as profit-sharing or pension plans, which are excluded from the CWCA). *Hartman v. Freedman*, 591 P.2d 1318, 1321 (Colo. 1979).

In 1988, the Colorado Court of Appeals picked up on this "vested and determinable" language from *Hartman* to analyze whether the following bonus structure counted as wages under the CWCA: "10% of the first $10,000 of profit and 20% of all additional profit before income tax . . . payable by March 15 of the year following that in which it was earned." *Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186, 187 (Colo. App. 1988). The plaintiff there had resigned before the March 15 bonus date. *Id*. Citing *Hartman*, the Court of Appeals asked whether the bonus was "both vested and determinable as of the date of termination." *Id*. at 188 (internal quotation marks omitted). The court concluded that the plaintiff's "bonus was earned and, therefore, became vested and determinable as of the date of termination, even though not due and payable for two and one-half months thereafter." *Id*.

In 2002, the Colorado Court of Appeals returned to a similar question, namely, whether stock options count as wages under the CWCA. *Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 923 (Colo. App. 2002). As part of its analysis, the court again drew on *Hartman* for the "vested and determinable" principle. *Id*. at 923 (internal quotation marks omitted). Based on the language of the employment agreement through which the employee was awarded the stock options, the court held that the stock options in question were analytically indistinguishable from the vacation pay at issue in *Hartman*, and therefore recoverable through the CWCA. *Id*. at 923–24.

The following year, the Colorado Legislature rearranged the CWCA. (*See* Part

III.A, above.)  This rearrangement also included certain amendments, including the following amendment to the definitional portion of the statute (underscoring indicates language added):

> "Wages" or "compensation" means:
>
> (I) All amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is performed under contract, subcontract, partnership, subpartnership, station plan, or other agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the person demanding payment.  <u>No amount is considered to be wages or compensation until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article.</u>
>
> <u>(II) Bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee;</u>
>
> <u>(III) Vacation pay earned in accordance with the terms of any agreement.  If an employer provides paid vacation for an employee, the employer shall pay upon separation from employment all vacation pay earned and determinable in accordance with the terms of any agreement between the employer and the employee.</u>

2003 Colo. Legis. Serv. ch. 286, § 1 (H.B. 03-1206) (originally codified at Colo. Rev. Stat. § 8-4-101(8)(a); currently codified at § 8-4-101(14)(a)).  Moreover, as noted previously, § 109 was amended as follows: "When an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned, <u>vested, determinable,</u> and unpaid at the time of such discharge is due and payable immediately."  *Id*. (codified at Colo. Rev. Stat. § 8-4-109(1)(a)).

The insertion of "vested" and "determinable" strongly suggests that these amendments were influenced by *Hartman*, *Rohr*, and *Montemayor*, and they appear to codify at least *Hartman* and *Rohr*. The amendments unfortunately show additional poor draftsmanship,[9] but the intent seems clear—to clarify what an employee can claim under § 109. And that clarification relates entirely to the sorts of compensation that tend to be payable upon termination rather than paycheck by paycheck. Again, § 109 still does not *exclude* the possibility of seeking unpaid wages from many years ago, but the foregoing at least provides a clue as to a more-comprehensible legislative intent, as compared to the intent that necessarily flows from Plaintiff's interpretation.

## G.    Recordkeeping Requirements

The third consideration is the CWCA's requirement that employers keep "records reflecting the information contained in an employee's itemized pay statement . . . for a period of at least *three years* after the wages or compensation were due."  Colo. Rev. Stat. § 8-4-103(4.5) (emphasis added).  Failure to do so can lead to administrative fines.  *See id*.  The Court has difficulty imagining that this three-year requirement corresponds by coincidence to the maximum statute of limitations (although the

---

[9] First, the Legislature addressed commissions both in subparagraph (I) and (II). Second, the "earned, vested, and determinable" language appears in subparagraph (I) but appears to apply most naturally to the topics addressed in subparagraphs (II) and (III).  Third, "earned, vested, and determinable" is partially duplicated in subparagraph (III), with the subtraction of the word "vested," but with no obvious reason for the difference.  Fourth, subparagraph (III) creates a substantive obligation as part of a definition—always a dangerous drafting choice, and especially so here given that it partially duplicates the obligation already established § 109.  Fifth, the Legislature placed portions of the definition of "'wages' or 'compensation'" into the substantive obligation in § 109, which is redundant and potentially confusing.

haphazard statutory drafting already on display here does not exclude that possibility).[10]

It would also seem odd if the Legislature intended § 109 to operate as Plaintiffs contend

—an indefinite lookback upon termination—while still telling employers that they are

only required to keep records for three years.[11]

## H.     Summary & Disposition

Given all of the foregoing, there are at least two plausible interpretations of

§ 109.  Plaintiffs' interpretation fits within § 109's plain language and would promote the

broad, remedial purpose of the CWCA.  On the other hand, looking at the entire statute

in context provides a fair argument for Defendants' assertion that §§ 103 and 109

address distinct, non-overlapping forms of compensation.

This Court may, and normally has a duty to, predict how the Colorado Supreme

Court would resolve this issue.  *See, e.g.*, *Vanover v. Cook*, 260 F.3d 1182, 1186 (10th

Cir. 2001) ("In the absence of definitive direction from the highest court of the state

. . . we must predict the course that body would take if confronted with the issue."

(internal quotation marks omitted)).  However, this Court may also certify undecided

Colorado state-law questions to the Colorado Supreme Court under Colorado Appellate

---

[10] All of the above providing further support for the trenchant observation, usually attributed to German Chancellor Otto von Bismarck, that it is probably best that the people not know how sausage and laws are made.

[11] In *Norwood* (p. 10), Judge Varholak addresses this concern by referring to the word "determinable" in § 109: "The 'determinable' requirement was added in 2003, and it protects employers from claims for wages that cannot be ascertained.  As a result, if there is insufficient evidence to prove 'determinable' unpaid overtime wages at the time of Plaintiff's termination, Defendant will not be responsible for those wages" (citation omitted).  In light of the interpretive and legislative history recounted above in Part III.F, the undersigned doubts that the Legislature inserted "determinable" so that employers would have a defense against older wage claims. Such a defense—lack of sufficient evidence to prove the entitlement to or amount of wages— would likely exist regardless.

Rule 21.1.  Although this procedure admittedly tends to delay the resolution of the lawsuit, the Court finds it appropriate in this instance for two principal reasons.  First, the outcome is of enormous importance to every employer and employee in Colorado.  Second, this is the sort of question that can easily evade state-court adjudication almost indefinitely because most CWCA claims are brought alongside FLSA claims, the latter of which trigger this Court's original jurisdiction.  Thus, if the plaintiff does not file in this Court to begin with, the defendant will usually remove.  Although the judges of this District strive to respect each other's decisions, we do not bind each other, and there already exists a "district split" between Judges Babcock, Jackson, and Varholak.  The Tenth Circuit, of course, could issue an opinion that binds this Court until the Colorado Supreme Court says otherwise, but in the undersigned's experience the Tenth Circuit is as likely as not to resolve this sort of question in a non-precedential order and judgment, similar to *Evans*, *supra*.

Accordingly, for a question of this magnitude, the Court finds it appropriate to *sua sponte* certify the matter to the Colorado Supreme Court.  The parties' summary judgment motions will therefore be denied without prejudice to renewal following the outcome of the certification proceeding.

To avoid as much delay as possible, the Court will permit this lawsuit to proceed through discovery under the assumption that Plaintiffs' CWCA claims will go forward as pleaded.  If the Colorado Supreme Court has not acted on and/or answered the certified question by the close of discovery, this Court will administratively close the case, subject to reopening for good cause, including upon the Colorado Supreme Court's disposition.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Early Motion for Partial Summary Judgment (ECF No. 23) is
   DENIED WITHOUT PREJUDICE;

2. Plaintiffs' Early Motion for Partial Summary Judgment (ECF No. 25) is DENIED
   WITHOUT PREJUDICE;

3. Defendants' Motion to Partially Dismiss Plaintiffs' Eleventh Count Against
   Defendants Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 33) is DENIED;

4. Pursuant to Colorado Appellate Rule 21.1, the Court CERTIFIES the following
   question to the Colorado Supreme Court:

   > Does Colo. Rev. Stat. § 8-4-109(1)(a) permit a terminated
   > employee to sue for wages or compensation that went
   > unpaid at any time during the employee's employment, even
   > when the statute of limitations (Colo. Rev. Stat. § 8-4-122)
   > has run on the cause of action the employee could have
   > brought for those unpaid wages under Colo. Rev. Stat.
   > § 8-4-103(1)(a)?

5. Pursuant to Colorado Appellate Rule 21.1(d), the Clerk shall forward this order to
   the Colorado Supreme Court under the Clerk's official seal, and the Clerk shall, if
   and when requested by the Colorado Supreme Court, forward the original or any
   copies of any portion of the record which the Colorado Supreme Court may
   determine necessary; and

6.    This matter may proceed through the close of discovery and any extensions of

that deadline that the undersigned or the magistrate judge may grant, but any

later deadlines (including the dispositive motions deadline and any deadline to

submit a proposed final pretrial order) are hereby VACATED, to be reset after

the Colorado Supreme Court's disposition of the certification proceedings.

Dated this 14th day of April, 2017.

BY THE COURT:

_____
William J. Martinez
United States District Judge